TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

CAITLYN F. COOK (MD Bar No. 2112140244)
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 616-1059
Facsimile: (202) 305-0275
Email: caitlyn.cook@usdoj.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>　　　　　　*Plaintiff*,<br><br>　　vs.<br><br>NATIONAL MARINE FISHERIES SERVICE, *et al.*,<br>　　　　　　*Defendants*. | CIVIL NO. 1:23-00306-MWJS-WRP<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

LEGAL BACKGROUND .................................................................................1

   A.   The Administrative Procedure Act .................................................1

   B.   The Endangered Species Act ..........................................................2

FACTUAL BACKGROUND ...........................................................................4

STANDARD OF REVIEW ..............................................................................7

ARGUMENT ......................................................................................................8

   I.   NMFS Provided a Brief Statement of the Grounds for Denying CBD's Petition. ....................................................................................8

   II.   NMFS Reasonably Declined to Promulgate Protective Regulations for the Threatened Corals. ...........................................................10

      a.   NMFS Explained That Section 9 Prohibitions Are Not Warranted..........11

      b.   NMFS Explained That Additional Protective Regulations Are Not Necessary and Advisable. ..........................................17

         i.   Additional Protective Regulations to Address Localized Threats Would Not Add Meaningful Conservation Benefit...........................................17

         ii.   Additional Protective Regulations Would Not Be Effective to Address the Global Threat of Climate Change....................................21

         iii.   It Is Reasonable for NMFS to Use Its Limited Resources on Higher-Priority, More-Effective Actions to Recover the Species. .....................24

REMEDY...........................................................................................................26

CONCLUSION .................................................................................................27

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Action for Child.'s Television v. F.C.C.*,
   564 F.2d 458 (D.C. Cir. 1977)................................................................. 8, 18, 22

*Alaska Dep't of Env't Conservation v. EPA*,
   540 U.S. 461 (2004) ...............................................................................22

*Amerijet Int'l Inc. v. Pistole*,
   753 F.3d 1343 (D.C. Cir. 2014)...............................................................16

*Califano v. Sanders*,
   430 U.S. 99 (1977)…………………………………………………………...23

*Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 402 (1971) ...............................................................................23

*City of Colo. Springs v. Solis*,
   589 F.3d 1121 (10th Cir. 2009).................................................................20

*Compassion Over Killing v. U.S. FDA*,
   849 F.3d 849 (9th Cir. 2017) ...................................................... passim

*Defs. of Wildlife v. Gutierrez*,
   532 F.3d 913 (D.C. Cir. 2008)..................................................................26

*DiGiovanni v. FAA*,
   249 Fed. App'x 842 (2d Cir. 2007) ....................................................... 9, 11, 26

*Earth Island Inst. v. Hogarth*,
   494 F.3d 757 (9th Cir. 2007) ...................................................................27

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ...............................................................................24

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ...............................................................................27

*Friends of Animals v. Williams*,
No. 21-2081 (RC), 2024 WL 3359507 (D.D.C. July 10, 2024)...........................17

*Horne v. USDA*,
494 Fed. App'x 774 (9th Cir. 2012) .....................................................................11

*In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.,*,
818 F. Supp. 2d 214 (D.D.C. 2011) ............................................................ 15, 17

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ................................................................................... passim

*Nat'l Customs Brokers & Forwarders Ass'n of Am. v. United States*,
883 F.2d 93 (D.C. Cir. 1989)...................................................................................7

*Nat'l Wildlife Fed'n v. NMFS*,
524 F.3d 917 (9th Cir. 2008) ..............................................................................27

*NLRB v. Fed. Lab. Rels. Auth.*,
834 F.2d 191 (D.C. Cir. 1987)...............................................................................9

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) .................................................................................8

*Preminger v. Sec'y of Veterans Affairs*,
632 F.3d 1345 (Fed. Cir. 2011) ...........................................................................16

*Sweet Home Chapter of Cmtys. for a Great Or. v. Lujan*,
806 F. Supp. 279 (D.D.C. 1992).........................................................................17

*Tenn. Valley Auth. v. Hill*,
437 U.S. 153 (1978) ...............................................................................................2

*Tourus Records, Inc. v. DEA*,
259 F.3d 731 (D.C. Cir. 2001)............................................................................12

*Washington v. Off. of the Comptroller*,
856 F.2d 1507 (11th Cir. 1988).........................................................................20

*WWHT, Inc. v. F.C.C.*,
   656 F.2d 807 (D.C. Cir. 1981).............................................................................8, 10

**Statutes**

5 U.S.C. § 553 ...................................................................................................2

5 U.S.C. § 553(e) ..........................................................................................2, 8

5 U.S.C. § 555(e) ...................................................................................... passim

5 U.S.C. § 706(2) ...............................................................................................7

16 U.S.C. § 1531(b) ...........................................................................................2

16 U.S.C. § 1532(6) ...........................................................................................3

16 U.S.C. § 1532(15) .........................................................................................2

16 U.S.C. § 1532(19) .........................................................................................3

16 U.S.C. § 1532(20) .........................................................................................3

16 U.S.C. § 1533(a) ...........................................................................................2

16 U.S.C. § 1533(b)(2)........................................................................................3

16 U.S.C. § 1533(f) ............................................................................................3

16 U.S.C. § 1533(d) ................................................................................... passim

16 U.S.C. § 1536 ..............................................................................................18

16 U.S.C. § 1536(a)(2)........................................................................................3

16 U.S.C. § 1538(a)(1)......................................................................................11

16 U.S.C. § 1538(a)(1)(A) .................................................................................3

**Rules**

Fed. R. Civ. P. 56(a)...........................................................................................8

**Regulations**

50 C.F.R. § 223.208(a).......................................................................................20

**Federal Register**

73 Fed. Reg. 64264 (Oct. 29, 2008)...................................................................13

77 Fed. Reg. 76706 (Dec. 28, 2012)...................................................................23

77 Fed. Reg. 76740 (Dec. 28, 2012)...................................................................23

78 Fed. Reg. 11766 (Feb. 20, 2013) ..................................................................23

79 Fed. Reg. 53852 (Sept. 10, 2014) ...................................................................4

88 Fed. Reg. 54026 (Aug. 9, 2023)......................................................................5

88 Fed. Reg. 59494 (Aug. 29, 2023).....................................................................4

88 Fed. Reg. 83644 (Nov. 30, 2023)....................................................................5

## INTRODUCTION

In 2020, the Center for Biological Diversity ("CBD") submitted a petition to the National Marine Fisheries Service ("NMFS") pursuant to Section 553(e) of the Administrative Procedure Act ("APA") requesting that NMFS promulgate protective regulations under Section 4(d) of the Endangered Species Act ("ESA") for twenty species of threatened corals occurring in the Caribbean and Indo-Pacific. NMFS considered the petition and determined that Section 4(d) regulations would not provide meaningful conservation benefit and would take resources away from higher priority actions that would benefit the species and, accordingly, denied the petition.

At heart, this case concerns whether NMFS properly responded to CBD's petition for rulemaking under the APA. And, indeed, it did. Consistent with the procedures provided by the APA, NMFS provided CBD with a response to its petition with a brief statement explaining the grounds for denial. The agency's response was reasonable, well-explained, and sufficient. Under the highly deferential standard of review afforded an agency in responding to a petition for rulemaking, NMFS's denial of the petition must stand.

## LEGAL BACKGROUND

**A. The Administrative Procedure Act**

1

The APA prescribes the procedures that federal agencies must follow when carrying out their administrative and regulatory functions. *See* 5 U.S.C. § 553. The APA provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." *Id.* § 553(e). After receiving such petition for rulemaking, an agency may either grant or deny the petition. If the petition is denied, "[p]rompt notice shall be given of the denial" to the petitioner. *Id.* § 555(e). "Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." *Id.*

## B. The Endangered Species Act

The ESA represents "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its stated purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species[.]" 16 U.S.C. § 1531(b).

Section 4 of the ESA requires the Secretary of Commerce ("Secretary") to determine whether any species should be listed as endangered or threatened.[1] 16

---

[1] The Secretaries of Commerce and the Interior share responsibility for listing species under the ESA. 16 U.S.C. § 1532(15). The Secretary of Commerce, acting through NMFS, is responsible for most marine species, including the species of coral at issue in this litigation.

2

U.S.C. § 1533(a). An endangered species is one that "is in danger of extinction throughout all or a significant portion of its range," and a threatened species is one that is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* §§ 1532(6), (20).

Once a species is listed as endangered or threatened, several provisions of the statute help ensure the survival and recovery of the species. *See, e.g.*, *id.* § 1533(f) (development and implementation of recovery plans); § 1533(b)(2) (critical habitat designation); § 1536(a)(2) (interagency consultation to avoid adverse effects to species). In addition to these protections, which apply equally to threatened and endangered species, Section 9 of the ESA prohibits the "take" of any endangered species of fish or wildlife without prior authorization and makes it unlawful for any person, *inter alia*, to "import any such species into, or export any such species from, the United States…." *Id.* § 1538(a)(1)(A), (B); *see also id.* § 1532(19) (defining "take").

By contrast, Section 9 does not automatically prohibit take of threatened species. Rather, Section 4(d) of the ESA authorizes NMFS to extend by regulation the Section 9(a)(1) prohibitions to threatened species.[2] *Id.* § 1533(d). Section 4(d)

---

[2] That the U.S. Fish and Wildlife Service ("FWS") promulgated a "blanket" regulation in 2024 extending all Section 9 prohibitions to threatened species upon listing is irrelevant here. NMFS exercises broad discretion to administer the ESA

also allows NMFS to issue any other protective measures that the Secretary deems "necessary and advisable to provide for the conservation of such species." *Id.*

## FACTUAL BACKGROUND

In 2014, NMFS published a final rule listing twenty species of coral as threatened species. AR001016 (79 Fed. Reg. 53852 (Sept. 10, 2014) ("Final Listing Rule")). Five of these species occur in the Caribbean[3] and the remaining fifteen occur in the Indo-Pacific.[4] *Id.* In the Final Listing Rule, NMFS identified the nine most important threats facing these coral species (and their relative importance) as ocean warming (high), disease (high), ocean acidification (medium-high), trophic effects of fishing (medium), sedimentation (low-medium), nutrients (low-medium), sea-level rise (low-medium), predation (low), and collection and trade (low). AR001049-50.

---

and need not mirror FWS's administration. Case-by-case promulgation of Section 4(d) rules is NMFS's long-standing practice. Moreover, FWS's blanket regulation was not in effect when CBD submitted its petition nor when NMFS responded.

[3] *Dendrogyra cylindrus*, *Orbicella annularis*, *Orbicella faveolata*, *Orbicella franksi*, and *Mycetophyllia ferox*. In 2023, NMFS proposed to reclassify *Dendrogyra cylindrus* as an endangered species. 88 Fed. Reg. 59494 (Aug. 29, 2023).

[4] *Acropora globiceps*, *Acropora jacquelineae*, *Acropora lokani*, *Acropora pharaonis*, *Acropora retusa*, *Acropora tenella*, *Anacropora spinosa*, *Euphyllia paradivisa*, *Isopora crateriformis*, *Montipora australiensis*, *Pavona diffluens* *Porites napopora*, and *Seriatopora aculeata*.

In 2015, NMFS considered, and ultimately decided against, promulgating Section 4(d) protective regulations for these twenty threatened coral species. NMFS determined that a Section 4(d) rule "would not provide appreciable conservation benefits" and resolved to focus its resources on non-regulatory conservation efforts. AR001319, AR001312. Such conservation efforts in recent years have included Section 7 consultations, the Coral Species Identification Training Program for the Indo-Pacific corals, proposed and finalized critical habitat designations, and the implementation of the recovery plan for elkhorn and staghorn corals, which includes recovery actions that benefit the other threatened Caribbean corals. *See, e.g.*, AR015263-64 (describing ongoing conservation efforts); 88 Fed. Reg. 54026 (Aug. 9, 2023) (Caribbean corals final critical habitat designation); 88 Fed. Reg. 83644 (Nov. 30, 2023) (Indo-Pacific corals proposed critical habitat designation); *Ctr. for Biological Diversity v. Raimondo*, No. 1:23-cv-00809-CRC (D.D.C.), ECF No. 17 (settlement in which NMFS agreed to send to the Federal Register a final determination concerning designation of critical habitat for Indo-Pacific corals by December 1, 2024).

In February 2020, CBD submitted to NMFS a petition for rulemaking pursuant to Section 553 of the APA, requesting that NMFS promulgate protective regulations under Section 4(d) for the twenty listed coral species. AR010761. Specifically, CBD petitioned NMFS "to extend all prohibitions of ESA Section 9…

5

and promulgate additional protective regulations needed for survival and recovery of the listed corals" concerning trade, disease, habitat regulation, fishing, water pollution, and greenhouse gas emissions. AR010761.

In May 2021, NMFS sent a letter to CBD indicating that NMFS had reviewed and considered CBD's petition for rulemaking and, ultimately, decided against taking the petitioned action. AR015264-65. In support of its decision to deny the petition, NMFS explained that protective regulations under Section 4(d) would not provide a conservation benefit to the listed corals. NMFS reasoned that application of Section 9 prohibitions to address trade and collection was unwarranted given the minimal levels of trade occurring and the low-level threat it poses. AR015263. NMFS also found that additional protective regulations under Section 4(d) would have limited effectiveness in addressing global threats stemming from climate change and localized threats from fishing and land-based sources of pollution. AR015264. NMFS explained that the vast majority of actions within U.S. jurisdiction that may present localized threats to these species are already subject to Section 7 consultation under the ESA, through which NMFS could propose reasonable and prudent measures to reduce the impact of take, as necessary. AR015264. NMFS also stated its intention to focus its limited resources on higher priority, more-effective conservation actions, such as recovery planning, critical

habitat designation, improving identification of the listed species, and addressing a recent disease outbreak. AR015264-65.

## STANDARD OF REVIEW

Challenges to final agency action are reviewed pursuant to Section 706 of the APA, which requires the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *Compassion Over Killing v. U.S. FDA*, 849 F.3d 849, 854 (9th Cir. 2017).

A denial of a petition for rulemaking must include "a brief statement of the grounds for denial," 5 U.S.C. § 555(e), with a "reasoned explanation" for the agency's refusal to initiate rulemaking. *Massachusetts v. EPA*, 549 U.S. 497, 527-28 (2007). Refusals to promulgate rules are subject to "extremely limited" and "highly deferential" judicial review. *Id.* (quoting *Nat'l Customs Brokers & Forwarders Ass'n of Am. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)). "In denying a petition for rulemaking, an agency must, at a minimum, clearly indicate that it has considered the potential problem identified in the petition and provide a 'reasonable explanation as to why it cannot or will not exercise its discretion' to initiate rulemaking." *Compassion Over Killing*, 849 F.3d at 857 (quoting *Massachusetts*, 549 U.S. at 533)). The arbitrary and capricious standard is applied in an especially deferential manner because the decision to deny a petition for

rulemaking is "essentially a legislative one, and the reviewing court should do no more than assure itself that the agency acted 'in a manner calculated to negate the dangers of arbitrariness and irrationality.'" *WWHT, Inc. v. F.C.C.*, 656 F.2d 807, 817 (D.C. Cir. 1981) (quoting *Action for Child.'s Television v. F.C.C.*, 564 F.2d 458, 472 n.24 (D.C. Cir. 1977)).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is a particularly appropriate tool to resolve challenges to agency action because, in such cases, the court does not act as a factfinder and, instead, "determine[s] whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

## ARGUMENT

### I.   NMFS Provided a Brief Statement of the Grounds for Denying CBD's Petition.

As a threshold matter, CBD neglects to address the level of deference afforded an agency when reviewing an agency's denial of a petition for rulemaking pursuant to 5 U.S.C. § 553(e). CBD's brief ignores the body of case law addressing the standard of review in these circumstances, citing only one case out of many, *Massachusetts v. EPA*. *See* ECF No. 44-1 at 20. As explained above, while the arbitrary and capricious standard controls, it is applied in a highly deferential manner

through extremely limited judicial review. *See Massachusetts*, 549 U.S. at 527-28. Thus, the question for the Court is not whether NMFS's decision to decline to issue protective regulations under Section 4(d) was arbitrary and capricious, 16 U.S.C. § 1533(d), but whether NMFS's denial of CBD's petition complied with the APA's requirement to provide "a brief statement of the grounds for denial." 5 U.S.C. § 555(e); *see also DiGiovanni v. FAA*, 249 Fed. App'x 842, 844 (2d Cir. 2007) (quoting *NLRB v. Fed. Lab. Rels. Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987)) (review of petition denial is limited to "narrow issues as defined by the denial of the petition for rulemaking," and does not extend to substantive review of merits of policies implicated by petition).

This standard represents a "low burden" for the agency. *Compassion Over Killing*, 849 F.3d at 857. For example, in *Compassion Over Killing*, petitioners sought regulation of purportedly misleading statements and images on egg cartons implying that hens were raised in cage-free environments and provided several examples of misleading labels. *Id.* at 853. The FDA declined to promulgate the proposed labeling regulations, reasoning that it could bring individual enforcement actions against misbranded eggs. *Id.* The Ninth Circuit found that while the agency "could have better addressed [the petition's] evidence," the petition denial passed muster because it reflected that the agency considered the evidence and articulated

a reasonable explanation for denial. *Id.* at 857 (upholding denial that "barely meets this low burden").

Here, NMFS complied with the APA when it explained that protective regulations under Section 4(d) would not meaningfully further the conservation of the species and that other mechanisms under the ESA, such as critical habitat designation, Section 7 consultation, and recovery planning, were better suited to address the most serious threats to the species. *See* AR015262-65. NMFS "clearly indicate[d] that it has considered the potential problem identified in the petition and provide[d] a 'reasonable explanation as to why it cannot or will not exercise its discretion' to initiate rulemaking." *Compassion Over Killing*, 849 F.3d at 857 (quoting *Massachusetts*, 549 U.S. at 533); *see also infra* Part II. Nothing more was required of the agency, and the Court must decline to apply CBD's more exacting standard of review. *Cf. WWHT*, 656 F.2d at 818 (petition denial overturned "only in the rarest and most compelling of circumstances").

## II. <u>NMFS Reasonably Declined to Promulgate Protective Regulations for the Threatened Corals.</u>

Section 553(e) of the APA requires NMFS to accept and consider petitions for rulemaking, "but does not compel [the] agency to undertake any rulemaking procedure merely because a petition is filed." *WWHT*, 656 F.2d at 813, n.9. NMFS "adequately explain[ed] the basis for its decision" in response to each request in the

petition to extend ESA Section 9 prohibitions to the threatened corals and to promulgate additional protective regulations. *See Horne v. USDA*, 494 Fed. App'x 774, 777 (9th Cir. 2012). NMFS's decision should be affirmed because it shows that NMFS considered the potential problem identified in the petition and provided a reasonable explanation for why it will not exercise its rulemaking authority. *See Compassion Over Killing*, 849 U.S. at 857. CBD's disagreement with NMFS's reasoning does not suggest an abuse of the agency's discretion that warrants overturning the petition denial. *See DiGiovanni*, 249 Fed. App'x at 844.

### a. NMFS Explained That Section 9 Prohibitions Are Not Warranted.

Section 4(d) of the ESA provides that NMFS "may by regulation prohibit with respect to any threatened species any act prohibited under [Section 9(a)(1)] … with respect to endangered species[.]"[5] 16 U.S.C. § 1533(d). NMFS considered CBD's request in its petition to extend ESA Section 9 prohibitions to the threatened corals and reasonably determined that such regulation "would not meaningfully further the conservation of the species." AR015263-64. Contrary to CBD's assertions that NMFS's decision lacked support, NMFS's letter denying CBD's request to extend Section 9 take prohibitions cited trade data for the species at issue, the regulatory

---

[5] Prohibited acts include, *inter alia*, the import, export, take, possession, sale, delivery, or transport of the species. *See* 16 U.S.C. § 1538(a)(1).

landscape, and the agency's scientific knowledge of the species and their morphological characteristics in support of its decision. *Contra* ECF No. 44-1 at 26; AR015263-64. The agency adequately "explain[ed] 'why it chose to do what it did.'" *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (citation omitted).

Regarding the Indo-Pacific threatened corals, NMFS considered the information on trade and collection presented in the petition and concluded that take did not threaten these corals to the extent suggested by the petition. NMFS found that "collection and trade is considered to be a minor source of take of these coral species" that poses "a low-level threat that minimally contributes to the extinction risk of these threatened corals…." AR015263 (citing AR001067). NMFS also specifically responded to the trade data cited in the petition indicating that, in 2014, 3,587 specimens of *Euphyllia paradivisa* and between 26 and 229 specimens of seven other species of Indo-Pacific coral were imported to the United States. AR015263; AR010769. In its response letter, NMFS contextualized these claims, explaining that a "specimen" of the coral in trade represents "only a small part of one colony" taken from species that each number "*at least* several million to several tens of millions of colonies…." AR015263 (emphasis added).

CBD argues that NMFS previously described *Euphyllia paradivisa* and certain *Acropora* species as rare in the Final Listing Rule for the corals at issue, undercutting the rationale for the petition denial. ECF No. 44-1 at 26-27. But the

Final Listing Rule explains that the term "rare," when applied to corals, has a different connotation. "A 'rare' coral may have millions of colonies as compared to a 'rare' vertebrate, which may only have hundreds of individuals." AR001018. Fundamentally, this is a matter of scale—and NMFS reasonably explained that the extremely minor levels of import, when compared to the size of the species' populations, do not warrant Section 9 take prohibitions.[6]

NMFS also reasonably found that difficulties in identifying and distinguishing between ESA listed and non-listed species of Indo-Pacific corals weighed against extending take prohibitions. Most of the listed Indo-Pacific corals are difficult to identify to the species-level, even for coral specialists. AR015263. CBD refers to the "low" or "moderate" "Species ID Uncertainty" rating for some of these corals to suggest that they are readily identifiable but ignores that this identifier refers to the "level of difficulty that *trained* marine biologists *familiar* with Indo-Pacific reef-

---

[6] Relatedly, the fact that NMFS issued a 4(d) rule for elkhorn and staghorn corals extending Section 9 protections when there was no evidence of take or import of those species does not undermine NMFS's petition denial. A driving factor for the elkhorn and staghorn rule was the belief that ESA listing might encourage trade of those previously untraded species. 73 Fed. Reg. 64264, 64271 (Oct. 29, 2008). Separately, when considering whether to extend 4(d) protections to the corals here in 2015, NMFS found that "*not* regulating trade" would avoid the potential for creation of a black market for these species which were already in trade, albeit minimally. AR001316 (emphasis added). These decisions represent different species, in different circumstances, at different points in time, and do not suggest arbitrary decisionmaking.

building coral ID would have identifying the species" in their colonies within the water. AR002531-32 (emphasis added). This does not indicate that law enforcement officers enforcing any take prohibition at customs, who are *not* marine biologists familiar with the listed corals, would be able to identify specimens to the species level. Indeed, NMFS noted in the petition denial that the Coral Species Identification Training Program "has illustrated the difficulty of training non-experts, such as law enforcement personnel" in Indo-Pacific coral identification.[7] AR015264.

CBD's argument that DNA sequencing may be used to identify these corals also misses the mark. Meaningful extension of Section 9 take prohibitions would need to be enforceable. Even if DNA sequencing could identify specimens to the species level—an assumption for which CBD provides no support—it would be impractical time- and resource-wise for law enforcement to DNA sequence each coral specimen that comes through customs. *See* AR009816 (describing difficulties in identifying corals through DNA sequencing due to limitations of sequencing databases and morphological variability within coral species). Lastly, the fact that

---

[7] NMFS's response that Section 9 prohibitions "would frustrate [its] outreach efforts and enforcement activities" is grounded in similar concerns. AR015264. All the threatened corals are listed under CITES Appendix II, imposing enforcement requirements upon import and export that the United States is bound to abide. Requiring species-level identification through Section 9 restrictions would pose a further logistical burden to enforcement personnel, as explained above, and detract resources from other outreach actions.

CITES requires species-level identification for *Euphyllia paradivisa* in international trade does not invalidate NMFS's decision to deny the petition. NMFS never "argue[d] that this species cannot be identified at all." ECF No. 44-1 at 30. Instead, as explained above, NMFS relied on the fact that the impact of trade on *Euphyllia paradivisa* is extremely minor to support its finding that import restrictions through Section 9 would not provide meaningful conservation benefits to the species. AR015263.

Regarding the Caribbean threatened corals, NMFS rationally explained that Section 9 prohibitions would not meaningfully further the conservation of the species because trade of these species is already largely prohibited. AR015263. Imports of these corals "are very low because collection and trade for commercial purposes is already prohibited throughout much of the Caribbean." *Id.* Indeed, NMFS noted that the import data contained within the petition "did not include any of the ESA-listed Caribbean corals." *Id.* NMFS additionally explained that fisheries management plans and regulations at the state- and territory-level already prohibit collection and trade of all five Caribbean corals within the waters of Florida, Puerto Rico, and the U.S. Virgin Islands. *Id.* NMFS's articulated bases for denying the petition were, thus, reasonable. *See In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 818 F. Supp. 2d 214, 233 (D.D.C. 2011) (upholding limited extension of Section 9 prohibitions through Section 4(d) based on NMFS's

15

reasonable conclusion that "a complementary management regime" encompassing specific treaties and statutes otherwise provided for the conservation of the polar bear).

CBD speaks at length regarding the threat posed by collection and trade to corals *generally* but cites no evidence that collection and trade of the twenty species of coral at issue pose such a threat as to undermine NMFS's decision not to extend Section 9 prohibitions.[8] ECF No. 44-1 at 22-27. NMFS's statements, supported by monitoring data, that trade and collection do not significantly threaten these species are not conclusory. Instead, they are statements of reasoning that warrant deference to the agency's finding on the petitioned action. *See Amerijet Int'l Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014); *see also Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345, 1354 (Fed. Cir. 2011) (upholding petition denial where agency's reasoning was supported by data).

---

[8] Notably, CBD misconstrues the U.S. Coral Reef Task Force's findings on corals and trade. *See* ECF No. 44-1 at 25. The cited report states that "[i]n many cases, the local and regional intensity of collection appears to be occurring at unsustainable levels[,]" but does not speak to the collection of the species at issue here, which have documented low-appearance in trade. *Compare* ER0222 *with* AR015263 (describing imports of species in petition). Similarly, the cited report did not find "trade in coral" to be a "high" threat to corals generally or the corals at issue here. *Contra* ECF No. 44-1 at 25 (citing ER0238). The table cited for this assertion demonstrates a "Ranking of Major Threats to Coral Reef Ecosystems By Region" and shows that the threat posed by trade in coral varies between regions and between jurisdictions within regions. ER0237-38. It did not indicate that trade poses a high-level threat overall.

### b. NMFS Explained That Additional Protective Regulations Are Not Necessary and Advisable.

Section 4(d) also provides that "the Secretary shall issue such regulations as [s]he deems necessary and advisable to provide for the conservation of [threatened] species." 16 U.S.C. § 1533(d). In its petition for rulemaking, CBD requested that NMFS issue additional protective regulations for the twenty species of threatened coral to address localized threats facing the species, as well as global threats related to climate change. NMFS exercises significant discretion in determining whether such additional protections are "necessary and advisable." *Id.*; *see Sweet Home Chapter of Cmtys. for a Great Or. v. Lujan*, 806 F. Supp. 279, 287 (D.D.C. 1992) (describing the Secretary's "broad discretion"); *Friends of Animals v. Williams*, No. 21-2081 (RC), 2024 WL 3359507, at *27 (D.D.C. July 10, 2024) (quoting *In re Polar Bear*, 818 F. Supp. 2d at 234 (same)). Here, NMFS reasonably determined, within its broad discretion and pursuant to its subject-matter expertise, that the promulgation of additional protective regulations was not warranted.

### i. Additional Protective Regulations to Address Localized Threats Would Not Add Meaningful Conservation Benefit.

The petition requested that NMFS promulgate additional protective regulations to address local stressors, such as habitat degradation, fishing, and water pollution. AR010767; AR010775. NMFS considered this request and found that additional protective regulations to address localized threats would have "relatively

limited conservation benefit" and would detract resources from higher priority conservation actions. AR015264.

NMFS also explained that the vast majority of activities that present localized threats to the listed corals are already subject to Section 7 consultation under the ESA. *Id.*; *see generally* 16 U.S.C. § 1536. Section 7 of the ESA requires interagency consultation of any activity authorized, funded, or carried out by federal agencies that may affect listed corals. AR015264. Through the consultation process, NMFS ensures that any effects to the species through incidental take will not rise to the level of jeopardizing the continued existence of the species through the identification of "reasonable and prudent measures to reduce the impact of take[.]" *Id.* Actions affecting corals that require Section 7 consultation include, without limitation, "[e]nergy projects, discharge of pollution from point sources, non-point source pollution, dredging, pile-driving, setting of water quality standards, vessel traffic, aquaculture facilities, military activities, and fisheries management practices." AR001284. CBD decries NMFS's reliance on Section 7 consultation to address these threats, but NMFS "has properly ground[ed] its reasons for action or inaction in the statute" and found that another mechanism in the ESA would be more effective to address localized threats than Section 4(d) protective regulations. *See Massachusetts*, 549 U.S. at 535; *see also Child.'s Television*, 564 F.2d at 479 ("In a statutory scheme in which Congress has given an agency various tools with which

18

to protect the public interest, the agency is entitled to some leeway in choosing which jurisdictional base and which regulatory tools will be most effective in advancing the Congressional objective.").

Regarding Indo-Pacific corals, NMFS additionally found that protective regulations addressing localized threats were not warranted because such regulations would be largely unenforceable. Such regulations would have "limited effectiveness" because "more than 99% of the collective ranges of the 15 Indo-Pacific corals occur outside of the U.S. Exclusive Economic Zone (EEZ)." AR015264. Moreover, of those fifteen species, only seven had been recorded in U.S. waters at the time of the petition response.[9] AR015264. Thus, NMFS reasonably determined that protective regulations that would apply in merely *one percent* of the collective range of these corals would not "meaningfully further[] the conservation of these species." *Id.*

CBD confusingly points to a statement within the 2015 Elkhorn and Staghorn Recovery Plan regarding the need for "local threat reductions" to elkhorn and staghorn coral as contradictory to NMFS's finding that additional protections addressing localized threats are not warranted for the species of coral at issue here. ECF No. 44-1 at 32. As an initial matter, elkhorn and staghorn corals were not the

---

[9] Subsequently, NMFS determined that only five of these fifteen species occupy areas within U.S. jurisdiction. 88 Fed. Reg. at 83651.

focus of the petition. And notably, even though the recovery plan for elkhorn and staghorn corals calls for these actions, the Section 4(d) rule for those species likewise does *not* include additional protective regulations to address localized threats. *See* 50 C.F.R. § 223.208(a). In any event, as CBD acknowledges, NMFS is pursuing "local threat reductions, mitigation strategies, and in and ex situ conservation and restoration actions" under the elkhorn and staghorn recovery plan. ECF No. 44-1 at 32 (citing AR010602). NMFS explained that these actions would "reduce threats common to the other threatened Caribbean coral species[,]" including localized threats, and opted to pursue implementation of that recovery plan over promulgation of protective regulations against localized threats. *See* AR015263, AR015264.

NMFS's response to the request to promulgate protections against localized threats was both well-reasoned and legally adequate. NMFS articulated the facts concerning the threatened corals at issue and their localized threats and rationally determined that additional protective regulations were not the best solution. *Cf. Washington v. Off. of the Comptroller*, 856 F.2d 1507, 1513 (11th Cir. 1988) (overturning petition denial that "was a mere *ipsi dixit*"). NMFS's letter denying the petition "inform[s] the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1134 (10th Cir. 2009). No more is required to pass this Court's extremely limited and highly deferential review.

ii.   Additional Protective Regulations Would Not Be Effective to
Address the Global Threat of Climate Change.

The petition also identified climate change as a threat to the listed coral species and requested that NMFS promulgate additional protective regulations to address climate-related threats such as ocean warming, disease, and ocean acidification. AR010763-65; AR010776-77. The petition specifically proposed that NMFS should protect corals from climate-related threats through regulations mandating reductions in greenhouse gas emissions. AR010776. NMFS considered this proposal and determined that developing, finalizing, and implementing recovery plans for these species is a more effective way to address the global threats posed by climate change. AR015264-65. Thus, NMFS provided a "reasonable explanation as to why it cannot or will not exercise its discretion" to initiate the petitioned rulemaking. *Massachusetts*, 549 U.S. at 533.

CBD claims that NMFS failed to substantively engage with the petition's request for climate regulations, ECF No. 44-1 at 21, but NMFS complied with the APA's requirement to provide a "brief statement of the grounds for denial" when it explained that recovery plan development and implementation is a more effective way to address ongoing threats. 5 U.S.C. § 555(e); AR015264. In a case, such as this, where the agency has decided against promulgation of a rule, the scope of review is very limited because the record will consist of merely a simple statement

of reasons for non-adoption. *Child.'s Television*, 564 F.2d at 472 n.24. Even if the agency explains its decision with less-than-ideal clarity, the reviewing court will not upset that decision if the agency's path may be reasonably discerned and is designed to combat arbitrariness and irrationality. *Id.*; *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004).

Moreover, contrary to CBD's characterizations, NMFS did not indicate that "it believes reducing greenhouse gas emissions or otherwise mitigating climate change would provide only limited conservation benefit for listed corals." ECF No. 44-1 at 20. Instead, NMFS simply determined that regulations under Section 4(d) were not the most effective mechanism to address those important threats, choosing instead to pursue other higher priorities for the species, such as completing critical habitat designations and implementing recovery planning efforts. AR015264-65. Indeed, recovery plans may include actions to conserve a species and address threats both at the local- and global-scale that can be taken by NMFS in partnership with foreign governments, nonprofit organizations, and the public. NMFS has previously recognized that "[a]ddressing atmospheric $CO_2$ concentration levels cannot be done through local actions alone and will require concerted action on the part of the global community." AR010698; AR010648 ("National and international efforts are needed to address global climate change…."). Thus, NMFS reasonably determined that recovery planning would be the best use of the agency's resources because it would

allow NMFS to "engag[e] with partners, within and outside the United States," in developing and implementing threat-reduction and recovery strategies. AR015264.

Again, NMFS "properly ground[ed] its reasons for action or inaction in the statute" and found that another mechanism in the ESA would be more effective to address global, climate-related threats than Section 4(d) protective regulations. *See Massachusetts*, 549 U.S. at 535. The Court should not substitute its—or CBD's— opinions for that of the expert agency. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). Moreover, NMFS's determination in this case comports with prior decisions in which NMFS and FWS declined to adopt protective regulations under Section 4(d) to address climate change because of the long-term, global nature of the threat. *See* 77 Fed. Reg. 76706 (Dec. 28, 2012) (declining to extend 4(d) protections to ringed seal); 77 Fed. Reg. 76740 (Dec. 28, 2012) (same for bearded seal); 78 Fed. Reg. 11766 (Feb. 20, 2013) (same for polar bear). CBD argues that NMFS was required to provide an explanation for departing from its previous positions with respect to climate, ECF No. 44-1 at 21, but NMFS has been consistent in its determination that a 4(d) rule is not the appropriate mechanism for addressing climate-related threats to these corals. Notably, NMFS also decided against promulgating Section 4(d) rules to address global threats like climate change in 2015, finding that "[t]hese are long term threats and the consequences for corals will

23

continue to manifest themselves over the next several decades. Protective regulations under 4(d) will not be effective in addressing long term global threats that are driving the statuses of these species[,] like climate change[.]"[10] AR001318.

Thus, NMFS considered the problem of climate-related threats highlighted in the petition and reasonably explained that a different mechanism under the ESA was better suited to combat the problem and declined to exercise its Section 4(d) authority in favor of recovery planning and Section 7 consultations. *See Compassion Over Killing*, 849 F.3d at 857. Under this Court's limited and highly deferential review, this determination must be upheld.

      iii.  It Is Reasonable for NMFS to Use Its Limited Resources on Higher-Priority, More-Effective Actions to Recover the Species.

Finally, it was reasonable for NMFS to determine that promulgation and enforcement of Section 4(d) protections would detract resources from other tools under the ESA better suited to address the threats facing the listed corals. Pursuing 4(d) regulations would take significant personnel, time, and funding that could be assigned to higher-priority conservation actions. CBD's argument that a

---

[10] Likewise, NMFS has been consistent in its finding that "promulgation of protective regulations via ESA section 4(d) would not provide appreciable conservation benefits." AR001319. NMFS has not changed its position on these issues and need not offer a reasoned explanation justifying any purported change. *Cf. F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

"comprehensive approach" is an "insufficiently 'reasoned justification' for the agency's petition denial" rests on a failed analogy to *Massachusetts v. EPA*. *See* ECF No. 44-1 at 22. There, the Supreme Court found that EPA failed to comply with the Clean Air Act's "clear statutory command" "to decide whether greenhouse gases cause or contribute to climate change" and could not rely on the agency's preferred comprehensive approach rather than make the required finding. 549 U.S. at 533-34. Here, the APA's petition review standard requires only that NMFS provide a brief statement of the grounds for denial (i.e., why NMFS declined to extend some or all of the Section 9 prohibitions and why NMFS did not find it necessary and advisable to promulgate the particular, tailored protective regulations as described in the petition), which the agency has done. 5 U.S.C. § 555(e); 16 U.S.C. § 1533(d). NMFS grounded its reasons for inaction in the ESA, as required by *Massachusetts v. EPA*, 549 U.S. at 535, and rationally found that Section 4(d) protective regulations would have relatively little conservation benefit while higher-priority conservation actions and ESA regulatory mechanisms (such as critical habitat designations, Section 7 consultations, and recovery planning) provide "a more effective way to address ongoing threats to these species." AR015264. NMFS also found that greater conservation benefit would come from the higher-priority actions of improving identification of Indo-Pacific species through training coral reef researchers, managers, and surveyors and addressing stony coral tissue loss disease in the

25

Caribbean. AR015264-65.

To be sure, as the Supreme Court "ha[s] repeated time and time again, an agency has broad discretion to choose how to best marshal its limited resources and personnel to carry out its delegated responsibilities." *Massachusetts*, 549 U.S. at 527. "The agency's decision to prioritize other projects is entitled to great deference by a reviewing court." *Compassion Over Killing*, 849 F.3d at 857; *see also DiGiovanni*, 249 Fed. App'x at 844 (upholding petition denial where ongoing commitment of resources to a strategic plan required agency to be selective in adding further rulemaking projects to its agenda); *Defs. of Wildlife v. Gutierrez*, 532 F.3d 913, 921 (D.C. Cir. 2008) (upholding petition denial where petitioned action would detract resources from agency's comprehensive strategy). Because prioritization of more-effective conservation actions was an acceptable basis for denial of the petition, along with the justifications provided above, this Court must uphold NMFS's determination.

## REMEDY

While Defendants disagree that any remedy is warranted in this case, if the Court were to find in CBD's favor, Defendants agree that the appropriate remedy would be to remand the petition denial to NMFS for a new determination. *See* ECF No. 44-1 at 33. But the Court need not set a deadline for a revised determination, as the "ordinary remedy when a court finds an agency's action to be arbitrary and

capricious is to remand for further administrative proceedings," although a court may "remand with specific instructions in 'rare circumstances.'" *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 770 (9th Cir. 2007) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). If the Court is inclined to order a new petition response by a date certain, Defendants respectfully request that the Court allow an opportunity for NMFS to evaluate staffing and budget constraints and present any such relevant evidence to the Court before equitable relief is fashioned. *See Nat'l Wildlife Fed'n v. NMFS*, 524 F.3d 917, 936 (9th Cir. 2008) (court has broad latitude in fashioning equitable relief) (citation omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny CBD's motion for summary judgment and grant Defendants' cross-motion for summary judgment.

Respectfully submitted this 30th day of August, 2024,

TODD KIM, Assistant Attorney General
S. JAY GOVINDAN, Section Chief
NICOLE M. SMITH, Assistant Section Chief
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section

*/s/ Caitlyn F. Cook*
CAITLYN F. COOK
Trial Attorney
Maryland Bar No. 2112140244
U.S. Department of Justice

Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P. O. Box 7611
Washington, D.C. 20044-7611
(202) 616-1059 (tel.)
(202) 305-0275 (fax)
caitlyn.cook@usdoj.gov

*Attorneys for Defendants*
*NATIONAL MARINE FISHERIES*
*SERVICE, GINA RAIMONDO, JANET*
*COIT*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

I hereby certify that this document contains 6,224 words, excluding the items exempted by Local Rule 7.4(d), and complies with the word limit of Local Rule 7.4(b).

<u>*/s/ Caitlyn F. Cook*</u>
Caitlyn F. Cook

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2024, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

<u>*/s/ Caitlyn F. Cook*</u>
Caitlyn F. Cook

*Attorney for Defendants*